IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNADETTE BURNS,<br>          Plaintiff, | :<br>: | No. 20-cv-05304-JMY |
| | : | |
| vs. | : | |
| | : | |
| USI INSURANCE SERVICES, LLC,<br>          Defendant. | :<br>: | |

**MEMORANDUM**

**Younge, J**                                                                                              **March 18, 2022**

      Currently before the Court is the Defendant's Motion for Summary Judgment (hereinafter "MSJ"). (ECF No. 11.) The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. L.R. 7.1(f). For the reasons set forth below, Defendant's motion for summary judgment will be granted.

**I.      FACTUAL AND PROCEDURAL BACKGROUND:**

      Plaintiff was an Account Executive at USI Insurance Services, LLC (USI) when she resigned from her job on September 20, 2019.[1] (Response to Statement of Undisputed Facts (hereinafter "Resp. SOF") ¶ 28, ECF No. 12-1.) In her resignation letter, Plaintiff indicated that she was experiencing severe anxiety along with panic attacks and that her job was affecting her mental and physical health. (*Id.*, Resignation Letter, Resp. Opp. MSJ, Ex. E., ECF No. 11-3.) After submitting her resignation, she brought this action under the American with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, *et seq.* (Complaint ¶¶ 37-46, ECF No. 1.) Plaintiff alleges that she was discriminated against on the basis of her mental health disability in violation

---

[1] Plaintiff worked on Mark Delany's book of business from 2005 until she resigned in 2019. (Resp. SOF ¶ 2.) Ms. Habermehl was her manager on paper, but Mr. Delany controlled everything. (*Id.* ¶ 76.) Plaintiff served as the primary contact for clients in Mr. Delany's book of business by ensuring renewals for client's insurance policies, coordinating with marketing staff, and managing account representatives, etc. (*Id.* ¶ 3.)

of the ADA. (*Id.*) She further alleges that the Defendant failed to accommodate her disability and failed to engage in the interactive process.

On Friday, September 20, 2019, just prior to submitting her resignation letter, Plaintiff had a meeting with her direct supervisor, Lisa Habermehl, Vice President of Commercial Lines. (Resp. SOF ¶¶ 6, 21.) During this meeting, Ms. Habermehl told Plaintiff that she would receive a six percent raise. (Resp. SOF ¶ 22.) Ms. Habermehl also told Plaintiff that Mr. Delany's book of business could not have two account representatives, and that USI would be cutting some of his support staff. (Resp. SOF ¶ 6, 23.) At this point, Plaintiff contacted Mr. Delany who joined the meeting to contest any staffing cuts to his book of business. (Burns Deposition page 191-192, MSJ Ex. A., ECF NO. 12-2; Resp. SOF ¶ 24.) Mr. Delany told Ms. Hebermehl that he wanted to ensure that defendant provided adequate staff to service his customers, and that he intended to discuss the staffing issue with upper management meaning his superiors, Chuck Parsons, P & C Practice Leader, and Dimitri Devieux, President of the Mid-Atlantic Region. (*Id.*)

In the late afternoon on September 20, 2019, around 4:00 or 4:30 p.m., Plaintiff called Mr. Delany and told him that she was going to quit. (Delany Deposition page 51, Response in Opposition SJM Ex D, ECF No. 12-5; Burns Deposition page 196-199.) Mr. Delany testified that she was crying and very upset during their phone conversation. (*Id.*) Mr. Delany reiterated that he intended to speak to upper management about the discussion they had earlier in the day with Ms. Habermehl and her desire to make staffing cuts.[2] Mr. Delany also told Plaintiff that he felt she should take the weekend to think things over prior to submitting her resignation. (Delany Deposition page 51.) Around 5:38 that evening, Plaintiff emailed a resignation letter to

---

[2] Delany testified that he contacted management over the weekend and staffing cuts were not made.

Lisa Habermehl, Chuck Parson, Dimitri Devieux and Mark Delany.  (*Id.* page 56, Resignation Letter.)

In the evening on Friday, September 20, 2019 at 7:51 p.m., Plaintiff sent a suicide letter to USI's website through the "Contact Us" feature.  The suicide letter read, "I am an employee and I need to go on record that I quit my job, I wan (sic) in mental and physical danger my family is staying by my side so I don't kill myself."  (Suicide Letter, SJM, Exhibit F, ECF No. 11-3 page 114; Resp. SOF ¶ 39.)  After Plaintiff returned to work the following week, Kathy O'Grady, Chief Human Resources Officer, confronted Plaintiff with the suicide letter, and Plaintiff responded by telling her it was a joke.  (Resp. SOF ¶ 39.)

Over the weekend and into the morning on Monday, September 23, 2019, Devieux, O'Grady, Mr. Delany and other members of the upper management at USI exchanged emails and had conversations about Plaintiff's resignation.  (Resp. SOF ¶¶ 32, 34, 35-38, 128, 132, 134-140.)  In relationship to her disability discrimination claim, Plaintiff specifically highlights comments made by Devieux.  (Opp. Br. page 12.)  At deposition, Devieux openly admitted that he contacted O'Grady and requested that she contact Plaintiff immediately to accept her resignation.  (Devieux Deposition page 99, Opp. Ex. B, ECF No. 12-3.)  He further explained that he felt the situation was urgent because Plaintiff was having suicidal thoughts.  (*Id.*)

Plaintiff also references an email sent by Ms. Habermehl in which she responded to Plaintiff's resignation letter by commenting, "here we go."  (Habermehl Email, Response in Opposition MSJ, Ex. M, ECF No. 12-14.)  To place this comment in its proper context, Ms. Habermehl explained that she was referencing the fact that Plaintiff had previously submitted resignation letters that she later rescinded.  (Habermehl Deposition page 59, Response in Opposition SJM Ex. F., ECF No. 12-7.)  Plaintiff submitted a resignation letter in 2018 citing

3

"workload stress" from "the number of accounts." (Resp. SOF ¶ 12.) She rescinded that resignation. (Resp. SOF ¶ 13.) Citing an increase in her workload, Plaintiff submitted a second resignation letter in April 2019. (Resp. SOF ¶ 14.) She rescinded that resignation, as well. (Resp. SOF ¶ 15.) On Monday, September 23, 2019, after seeing Plaintiff's suicide letter, Ms. Habermehl commented, "What is interesting is that she sent it after she quit. She could have turned this into a disability issue. Need to be careful about convincing her to stay." (Habermehl Text Message, Response in Opposition MSJ, EX. E., ECF No. 12-6.) At deposition, Ms. Habermehl explained that her comment was not made with discriminatory animosity. (Habermehl Deposition page 76.) She testified that she was simply bewildered and perplexed by Plaintiff's course of conduct and logic for submitting a suicide letter after resigning from her job. (*Id.*)

On Monday, September 23, 2019, Plaintiff and Mr. Delany met first thing in the morning between 8:00 a.m. and 8:30 a.m. to discuss her resignation. (Resp. SOF ¶ 31.) During the meeting, Plaintiff openly admits that she never asked to rescind her resignation. (*Id.*; Burns Deposition page 231-232.) Plaintiff now claims that she felt she could not rescind her resignation because of comments made by Mr. Delany during their meeting. (Burns Deposition page 231.) While discussing her resignation in light of the fact that upper management did not approve of the threatened staffing cuts, Plaintiff claims that Delany told her, "It doesn't matter now with everything they know about you." (*Id.* page 231 (In using the term "they", Plaintiff alleges that Mr. Delany was referring to upper management and what they knew about her mental health).) Delany denies having ever made this statement or telling Plaintiff that she could not rescind her resignation. (Delany Deposition page 77.) Delany testified that prior to reading the Complaint that was filed in this matter, he knew nothing about Plaintiff's purported desire to

4

rescind her resignation, and that the first time he ever heard anything about Plaintiff wanting to rescind was when he was preparing for his deposition. (*Id.*) Delany further referenced the fact that this was the third time that Plaintiff had submitted a resignation letter. (*Id.* page 70.)

## II.     STANDARD OF REVIEW:

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In examining the defendant's motion, the court must view the facts in the light most favorable to the nonmovant, drawing all reasonable inferences in his favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried before a jury. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 255.

## III.    DISCUSSION:

In response to Defendant's motion for summary judgment, Plaintiff identifies three distinct theories that she alleges allow her to proceed to trial on her claim that Defendant violated the ADA. Plaintiff argues that she can present direct evidence to establish a claim for disability discrimination in violation of the ADA based upon comments made by supervisors and upper management in which she alleges they directly referenced her mental health status in conjunction with her resignation. Plaintiff also argues that she can prove a circumstantial case of

employment discrimination by presenting evidence that satisfies the elements of the *McDonald-Douglas* burden shifting analysis. Finally, Plaintiff asserts a separate claim for failure to accommodate and failure to engage in the interactive process.

A.     **Plaintiff fails to Present Direct Evidence of Discrimination.**

The evidence that Plaintiff offers in support of her employment discrimination claim is woefully deficient to be classified as direct evidence of discrimination. To establish direct evidence of discrimination, the plaintiff must point to evidence that "directly reflect[s] the alleged discriminatory attitude" and be "so revealing of discriminatory animus that it is not necessary to rely on any presumptions of the prima facie case to shift the burden of production." *Buchsbaum v. Univ. Physicians Plan*, 55 F. App'x 40, 45 (3d Cir 2002). "If the trier of fact must infer discrimination from the employer's remarks or actions, then the evidence is not direct evidence of discrimination." *Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. Supp. 2d 693, 702 (W.D. Pa. 2011). Assuming arguendo that Plaintiff was able to come forward with direct evidence of employment discrimination, then she would not be required to establish the elements of a prima facie case of employment discrimination in violation of the ADA under the *McDonnald Douglas* burden shifting analysis. *Woliski v. City of Erie*, 900 Supp. 2d 553 (W.D. Pa. Sep 28, 2021).

Plaintiff cites to three pieces of evidence in support of her theory that she can establish a prima facie case of employment discrimination based on direct evidence. She cites to the fact that during deposition, Devieux was asked why he felt it was important for Kathy O'Grady to contact Plaintiff immediately and accept her resignation. (Devieux Deposition page 99-100, Opp. Ex. B, ECF No. 12-3.) Devieux responded to this question by referencing Plaintiff's suicide threat, and he indicated that he believed the suicide threat gave the matter some urgency.

He further referenced the two previous occasions when upper management (Defendant) convinced Plaintiff to rescind resignations that she had submitted, and the fact that they did not intend to coerce Plaintiff on this occasion.  In further support of her claim that she can produce direct evidence of employment discrimination based on her disability, Plaintiff cites to the conversation she had with Delany after returning to work on Monday morning – the conversation in which Delany allegedly told her, "It doesn't matter now with everything they know about you." (Burns Deposition page 231 (In using the term "they", Plaintiff alleges that Mr. Delany was referring to upper management and what they knew about her mental health).)  Finally, Plaintiff references an email that was sent by Habermehl in which she wrote "here we go again" in reference to Plaintiff's third and final resignation.

  The Court disagrees with Plaintiff's theory that she can support a prima facie claim of disability discrimination with direct evidence.  At no point did Devieux, Delany, Habermehl, or any member of Defendant's upper management make any improper reference to Plaintiff's mental health.  Any reference that these individuals made to Plaintiff's mental health must be evaluated in context and in conjunction with the fact that Plaintiff herself referenced mental health problems and work-related stress as her reason for resigning.  Devieux clearly indicated that Plaintiff's suicide threat was a factor in his decision not to attempt to convince Plaintiff to rescind her resignation.  The fact that Devieux considered the suicide letter when making an employment decision does not establish that he improperly took into account the Plaintiff's purported mental health disability.  Plaintiff's act of forwarding a suicide letter to Defendant's webpage was conduct that arguably arose from an underlying mental health problem or disability.  However, the conclusion that Plaintiff's conduct was inextricably interwoven with her mental health condition is a clear example of the type of evidence that requires an inference to

7

establish a fact.  For the jury to conclude that Plaintiff had been discriminated against on the basis of her disability, it would have to infer that Devieux knew that her suicide threat was a symptom of a disability which is a conclusion that must be reached by an inference.

      This same principle applies to the statements that Delany allegedly made to Plaintiff during their conversation on Monday morning when she returned to work.[3]  Delany may have been referring to Plaintiff's mental health condition or the suicide threat that she forwarded to Defendant's webpage.  To draw the conclusion that Delany was referring to Plaintiff's mental health condition and not her suicide threat would require the jury to draw a conclusion from the evidence.  Again, Plaintiff's suicide threat constitutes conduct that was presumably related to a mental health condition, but this conclusion still requires an inference to reach that conclusion.  The mere fact that Delany or Devieux may have made reference to the suicide letter that Plaintiff submitted to the company webpage does not conclusively prove they were improperly referring to Plaintiff's mental health problem.  The Court is equally unwilling to equate their comments with direct evidence of discrimination because improper or disruptive workplace conduct can fairly be considered by an employer in relationship to an employment decision.  *Coleman v. Pa. State Police*, No. 11-1457, 2013 U.S. Dist. LEXIS 99609, at *41 (W.D. Pa. July 13, 2013) ("[a]n employee who is a direct threat to the safety of himself or others is not a qualified individual with a disability"); *Felix v. WisDOT*, 828 F.3d 560 (7th Cir. July 6, 2016) (a disability that results in unacceptable workplace behavior in the nature of a suicide threat can render an employee unqualified to remain in a position and can constitute grounds for termination that fall outside the ADA because an employer does not have to tolerate unacceptable behavior).

---

[3] As previously mentioned, Delany denies ever having made this statement.

Habermehl's statement of "here we go again" is equally open to interpretation given the two previous resignations submitted by Plaintiff. Therefore, it does not constitute direct evidence of employment discrimination.

**B.      Plaintiff Fails to Establish a Circumstantial Case of Employment Discrimination.**

Plaintiff fails to present sufficient circumstantial evidence to establish a prima facie case of disability discrimination in violation of the ADA. To establish a circumstantial claim for disability discrimination under the ADA, Plaintiff must satisfy the elements of the *McDonald Douglas* burden-shifting framework. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). The first step in the *McDonald Douglas* burden-shifting framework requires that Plaintiff establish a prima facie case of discrimination. *Id.* At the summary judgment stage, this means Plaintiff must present sufficient evidence to show: (1) that she is a disabled person within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) that she suffered an adverse employment action because of her disability. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *see also Sulima v. Tabyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). At the summary judgment stage Plaintiff cannot rely on unsupported allegations in the pleadings; rather, she must establish by a preponderance of the evidence that genuine issues of material fact exist for trial. *Solomon v. Soc'y of Auto. Eng'rs,* 41 Fed. Appx. 585, 586 (3d Cir. 2002) (affirming district court's rejection of claims based solely on the plaintiff's own testimony, stating "a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.") (citing *Celotex Corp v. Catrett,* 477 U.S. 317, 324 (1986)); *see also Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 252 (3d Cir. 1999) (holding same).

Plaintiff is unable to satisfy the third prong of the test to establish a prima facie case of discrimination – she has not established that she suffered an adverse employment action – because Defendant did not coerce her into resigning from her job as an Account Executive at USI Insurance Company. *Schofield v. Metro Life Ins. Co.*, 2006 U.S. Dist. LEXIS 65998 * 25 (E.D. Pa. Sep 15, 2006), *aff'd*, 252 F. App'x 500, 503-505 (3d Cir. 2007) (an employee who voluntarily resigns cannot show he suffered an adverse employment action). An adverse employment action occurs when an employer subjects an employee to a significant change in employment status. *LaRochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 690 (E.D. Pa. Sep. 27, 2016). "An adverse employment action necessarily encompasses all tangible employment actions such as hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits." *Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003). However, "[u]nless there is a claim for constructive discharge an employee's voluntary resignation does not constitute an adverse employment action." *LaRochelle*, 210 F. Supp. 3d at 705; *Checa v. Drexel*, No. 16-108, 2016 U.S. Dist. LEXIS 83524, at * 16 (E.D. Pa. June 28, 2016) ("[o]our Court of Appeals had not recognized voluntary resignations to be adverse employment action."); *Sherrod v. Phila. Gas Works*, 209 F. Supp. 2d 443, 451 (E.D. Pa 2002), *aff'd*, 57 F. App'x 68 (3d Cir. 2003) (granting summary judgment where plaintiff tendered a resignation, finding it was "clearly a voluntary act.").

Plaintiff makes an argument that is not supported by the facts of this case or the law in this jurisdiction when she argues that Defendant violated the ADA by not permitting her to rescind her resignation. Plaintiff openly admits that she never attempted to rescind her resignation (Burns Deposition page 231-232), and she cannot now circumvent this fact. Plaintiff argues that she did not attempt to rescind her resignation because she was left with the

impression that any attempt to rescind would be futile following the conversation that she had with Delany at their meeting on Monday morning in which he purportedly told her, "It doesn't matter now with everything they know about you." (Burns Deposition page 231; Opposition Brief page 13.) However, Plaintiff's argument is of no moment because even if Plaintiff had attempted to rescind her resignation (which she did not) and Defendant refused to rehire Plaintiff, this is not an adverse action. *Henderson v. Mercy Catholic Med. Ctr*, No. 17-1271, 2018 U.S. Dist. LEXIS 113191, at *17-18 (E.D. Pa. July 9, 2018) ("An employer's refusal to allow an employee to rescind his resignation has been held not to be an adverse employment action.") (quoting *Jones v. McCormick & Schmick's Seafood Rests.*, Inc., No. 12-4503, 2014 U.S. Dist. LEXIS 58460, at *11 (D.N.J. Apr. 28, 2014)); *Checa*, 2016 U.S. Dist. LEXIS 83524, at *16 ("courts in this Circuit specifically decline to recognize the refusal to allow an employee to rescind his resignation to be an adverse employment action, without a contractual or statutory duty to do so, or without a finding of a constructive discharge.") (*citing Hibbard v. Penn-Trafford Sch. Dist.*, No. 13-622, 2014 U.S. Dist. LEXIS 20237 (W.D. Pa. Feb. 19, 2014)); *Schofield*, 2006 U.S. Dist. LEXIS 65998, at *25-26 ("failure to accept a previous employee's rescission of his voluntary resignation is not an adverse employment action for the simple reason that the employment relationship has ended.").

### B.1. Plaintiff's Allegations of Constructive Discharge Do Not Nullify Her Voluntary Resignation.

Plaintiff's constructive discharge argument does not prevent the Court from entering summary judgment in favor of Defendant. To establish a constructive discharge, a plaintiff must show the situation surpasses "the threshold of intolerable conditions." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 169 (3d Cir. 2001). That intolerable threshold "is assessed by the objective standard of whether a reasonable person in the employee's position would have felt

compelled to resign – that is whether [she] would have had no choice but to resign." *Gilbert v. Philadelphia Media Holdings, LLC*, 564 F. Supp. 2d 429, 440 n.2 (E.D. Pa. 2008).

Plaintiff essentially argues that her resignation was involuntary based on a theory of constructive discharge. (Opposition Brief page 20.) In support of her constructive discharge theory, she points to an ever-increasing workload and lack of support staff which made the conditions of her employment intolerable. (*Id.*) She specifically points to a meeting she had with Habermehl just before she submitted her resignation in which Habermehl indicated that further cuts would be made to Plaintiff's support staff. (*Id.*) Plaintiff neglects to point-out that Delany was also involved in the meeting, and he clearly stated his intention to contest any staffing cuts to his book of business. (Burns Deposition page 191-192; Resp. SOF ¶ 112.) Delany testified that he spoke to upper management following the meeting with Habermehl and was assured that Defendant would provide support for his book of business. (Resp. SOF ¶¶ 128, 131-132, 134.) Therefore, the facts do not support Plaintiff's constructive discharge theory.

Plaintiff's constructive discharge theory is not only inconsistent with the facts of this case, it is also inconsistent with sound legal precedent in this jurisdiction. Generally speaking, "staff shortages alone do not support a constructive discharge claim." *Rager v. UPS*, No. 07-0617, 2008 U.S. Dist. LEXIS 90650, at *13 (W.D. Pa. Nov. 7, 2008). Similarly, "increasing workload is not sufficient in and of itself to yield a constructive discharge." *Abror v. Pa. Dep't of Labor & Indus. Office of Vocational Rehab.*, No. 17-cv-2221, 2019 U.S. Dist. LEXIS 108468, at *10-11 (M.D. Pa. June 28, 2019).

Plaintiff's claim that she was forced to resign under duress based on Defendant's active misrepresentation of material fact – staffing cuts – is equally unpersuasive. In support of her contention, she cites to *Butler v. BTC Foods, Inc.*, No. 12-0492, 2014 U.S. Dist. LEXIS 11286,

at *13-14 (E.D. Pa. Jan 30, 2014) ("An employee's resignation will be considered involuntary if: (1) the employer forces the resignation by using coercion or duress, or (2) employee resigned because the employer deceived or misrepresented a material fact to the employee."). However, Plaintiff was not actively misled into submitting a resignation because Delany contested the staffing cuts suggested by Habermehl, and he clearly told Plaintiff that he intended to address the issue with upper management prior to Plaintiff submitting her resignation. Under these facts, Plaintiff cannot establish that she was coerced or placed under duress by a material misrepresentation.

C. **Entry of Summary Judgment is Appropriate on Plaintiff's Claim for Failure to Accommodate and Failure to Engage in the Interactive Process.**

Plaintiff is unable to establish that she requested an accommodation for a professionally diagnosed mental health disability. Plaintiff is also unable to establish that she could have been reasonably accommodated. Therefore, summary judgment must be entered on her failure to accommodate claim. To establish a claim for failure to accommodate, a plaintiff must show that: (1) she was disabled and the employer knew it; (2) she requested an accommodation; (3) the employer did not make a good faith effort to accommodate; and (4) the employee could have been reasonably accommodated. *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 741 (E.D. Pa. 2019).

At deposition, when asked about her request for an accommodation, she said that she requested support. (Resp. SOF ¶ 51.) According to Plaintiff, she had conversations about support with three USI employees; Mr. Delany, Ms. Habermehl, and Mr. Devieux. (Resp. SOF ¶ 52.) The evidence of record establishes that Plaintiff never contacted human resources in connection with her purported request for an accommodation. It also establishes that Plaintiff never made a specific request for an accommodation in connection with her purported mental health disability. Plaintiff's evidence, at best, establishes that Mr. Delany and Ms. Habermehl

were aware that Plaintiff had been diagnosed with or was experiencing anxiety at some point in 2016 and that she was later diagnosed with panic attacks on September 11, 2019—just days before she submitted her resignation. (Burns Deposition page 97.) However, the record is scant as to evidence to establish that Defendant was aware that Plaintiff had been diagnosed with a mental health condition, and more specifically that she was requesting an accommodation based on that condition. Plaintiff did not establish that any request for support was a request for an accommodation in connection with her purported disability.

For example, in connection with her failure to accommodate claim, Plaintiff testified, "I spoke to [Delany] regarding the additional workload and the increased difficulty of the accounts and the various numerous tasks that were coming in and they're hard to keep up with. I told him I was having stress and anxiety, and he said he would talk to [upper management]." (Burns Deposition page 256.) Plaintiff alleges that she asked Mr. Delany to look at the book of business to see if accounts could go elsewhere, take away parts of her workload, hire someone new or transition someone into a role to support her and provide assistance with marketing. (Resp. SOF 53.) Plaintiff does not clearly identify when these conversations occurred or that she told Delany that she was requesting an accommodation in connection with a mental health condition that had been diagnosed by a professional. The fact that Plaintiff was experiencing work-related stress and anxiety alone is insufficient to establish that she requested or was entitled to an accommodation under the ADA. *Shafnisky v. Bell Atl., Inc.*, No. 01-3044, 2002 U.S. Dist. LEXIS 21829, at *20 (E.D. Pa. Nov. 5, 2002) (finding the Plaintiff's failure to accommodate claim failed because although plaintiff requested a position with less stress and employer knew of her condition, there was no evidence the request for the new position reflected a need to accommodate a disability); *Caps v. Mondelez Global, LLC*, 147 F. Supp. 3d 327, 340 (E.D. Pa.

2015) (granting summary judgment on the plaintiff's failure to accommodation claims because "[the plaintiff] never made a request for an accommodation.").

Plaintiff's testimony about her conversations with Ms. Habermehl in relationship to her failure to accommodate claim, presents a similar problem to that of her testimony in relationship to Ms. Delany.  With the exception of her September 11, 2019 medical appointment and diagnosis of panic attacks, Plaintiff offers little to establish when these conversations took place. (Burns Deposition 270-271.)  Plaintiff further fails to establish that she told Ms. Habermehl she was requesting an accommodation in connection with a professionally diagnosed condition of anxiety or panic attacks.  (Burns Deposition.)  In addition, Plaintiff testified that when she told Habermehl that she was experiencing stress and anxiety in relationship to a project identified as the Surrey Carlton Account, Ms. Habermehl removed the project from Plaintiff's workload. (Burns Deposition page 171, 175, 176, 177.)  Ms. Habermehl also removed a project identified as the BFC First Avenue renewal, (Burns Deposition page 176), which further undermines her failure to accommodate claim.

Plaintiff equally fails to present evidence to establish that her requested accommodation was reasonable.  The ADA does not require that an employer eliminate an essential function of an employee's job, hire new employees or transfer existing employees into a new role to provide support.  *Lucarelli v. Contail*, No. 98-CV-5904, 2002 U.S. Dist. LEXIS 12201, at *28 (E.D. Pa. March 26, 2002) ("A job function is an essential function where the reasons the position exists is to perform that particular function.").  Courts in the Third Circuit and in other circuits have held that eliminating responsibilities that are essential functions of the job – or shifting essential functions to other employees – is not a reasonable accommodation as a matter of law.  *See Nixon v. Runyon*, 856 F. Supp. 977, 989 (E.D. Pa. 1994) ("An accommodation that eliminates an

essential function of a job is not reasonable."); *Irving v. Chester Water Auth.*, No. 08-5156, 2010 U.S. Dist. LEXIS 60415, at *14-15 (E.D. Pa. June 17, 2020) ("An accommodation that would shift Plaintiff's burden to other employees or require other employees to work harder is not the type of reasonable accommodation envisioned by the ADA."); *Lombardo v. Air Products Chemicals Inc.*, No. 05-1120, 2006 U.S. Dist. LEXIS 46077, at *39-40 (E.D. Pa. July 7, 2006) (finding that reallocating essential functions of job to other employees is unreasonable as a matter of law); *Lucarelli*, 2002 U.S. Dist. LEXIS 12201, at *20 ("Employers are not, however, required to assign existing employees or hire additional employees to perform essential functions of an employee's job . . ."); *Moritz v. Frontier Airlines*, 147 F.3d 784, 788 (8th Cir. 1998) ("[i]t is well settled that an employer is under no obligations to reallocate the essential functions of a position that a qualified individual must perform"); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) (finding that assignment of a helper is not a reasonable accommodation); *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 14-5125, 2018 U.S. Dist. LEXIS 56759, at *16 (E.D. N.Y. 2018) ("[h]er request for a reduced workload—by giving more work to her co-workers or having another employee come into work . . . was not a request for a reasonable accommodation.").

Plaintiff's claim for failure to engage in the interactive process fails for a reason similar to the reason that her claim for failure to accommodate fails. Her evidence simply fails to establish that she requested a specific accommodation for a diagnosed disability. Therefore, she cannot prove that Defendants failed to engage in the interactive process. To show an employer failed to engage in the interactive process, the plaintiff must establish four things: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the

employee in seeking accommodations; and (4) that the employer lacked good faith because the employee could have been reasonably accommodated. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330-331 (E.D. Pa. June 27, 2003).

## IV. CONCLUSION:

For these reasons, the Defendant's Motion for summary judgment is granted and an appropriate order will follow.

BY THE COURT:

   /s/ John Milton Younge   
Judge John Milton Younge